EXHIBIT I

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE BAYAMÓN**

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLÓN**<br><br>**Parte Demandante**<br><br>v.<br><br>**CAPARRA CENTER ASSOCIATE LLC; ARGENTINA GRILL INC; VRJT INC; CARIBBEAN RESTAURANTS LLC; WALGREEN OF PUERTO RICO, INC.; ME SALVE, INC.; KRESS STORES OF PUERTO RICO, INC.; ROMA LIMITED INC.; PRWIRELESS PR, LLC; HUMBERTO VIDAL, INC.; NEW YORK DEPARTMENT STORES DE PUERTO RICO, INC.; BANCO POPULAR DE PUERTO RICO; INTERNACIONAL RESTAURANT SERVICES, INC; GAME ZONE, INC.; SWEET ANN CAKE INC; CARIBBEAN CINEMAS OF SAN PATRICIO, INC.; OFFICE DEPOT PUERTO RICO, L.L.C.; OFFICEMAX PUERTO RICO, INC.; FULANOS DE TAL 1-100**<br><br>**Parte Demandada** | **CIVIL NÚM:**<br><br><br><br><br><br><br><br><br><br><br><br>**SOBRE:**<br>**PETICIÓN DE ORDEN; DAÑOS** |

**DEMANDA DE ORDEN DE INTERDICTO PERMANENTE**
*(No se incluye interdicto Preliminar)*

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Faustino Xavier Betancourt Colón (en adelante, "Parte Demandante" o "Faustino Colón"), a través de la representación legal que suscribe, y solicita un interdicto permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento del centro comercial San Patricio Plaza, ubicado en Municipio de Guaynabo, que alberga un grupo de acomodos públicos en su interior. El incumplimiento corresponde a el dueño de la Propiedad **CAPARRA CENTER ASSOCIATE LLC** H/N/C San Patricio Plaza y de los siguientes acomodos públicos que operan en su interior: **ARGENTINA GRILL INC** H/N/C Parilla Argentina; **VRJT INC** H/N/C Subway; **CARIBBEAN RESTAURANTS LLC** H/N/C Burger King; **WALGREEN OF PUERTO RICO, INC.** H/N/C Walgreens; **ME SALVE, INC.** H/N/C Me Salve; **KRESS STORES OF PUERTO RICO, INC.** H/N/C Kress and Kress Kids; **ROMA LIMITED INC.** H/N/C Roma Plus**; PRWIRELESS PR, LLC** H/N/C Boost Mobile**; HUMBERTO VIDAL, INC.** H/N/C Huberto Vidal**; NEW YORK DEPARTMENT STORES**

**DE PUERTO RICO, INC** H/N/C TJ Max; **BANCO POPULAR DE PUERTO RICO** H/N/C Banco Popular; **INTERNACIONAL RESTAURANT SERVICES, INC** H/N/C Chili's Grill & Bar; **GAME ZONE, INC.** H/N/C Game Zone; **SWEET ANN CAKE INC** H/N/C Sweet Ann Cakes; **CARIBBEAN CINEMAS OF SAN PATRICIO, INC.** H/N/C Caribbean Cinemas; **OFFICE DEPOT PUERTO RICO, L.L.C.; OFFICEMAX PUERTO RICO, INC.** H/N/C Office Depot .; **FULANOS DE TAL 1-100** (en delante de manera individual por su nombre comercial o de manera conjunta "Parte Demandada" con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referimos al estatuto federal como "Ley ADA")[1]. Se solicita un interdicto permanente, daños nominales, daños compensatorios y otros remedios al amparo de la Sección 504 Rehabilitación Act, 29 U.S.C $ 794 entre otros remedios legales bajo la legislación federal.

### EL LUGAR DE ACOMÓDO PÚBLICO EN CUESTIÓN

1.      Esta es una acción que busca remediar la discriminación ilegal en el centro comercial San Patricio Plaza y los públicos[2] establecidos y que operan en el interior de la Propiedad, mencionados a continuación:

### 2.  SAN PATRICIO PLAZA
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.408996810730702, -66.10557543822093
TELÉFONO: (787) 792 5328

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Título III de Ley ADA es: http://www.ada.gov/

[2] El término "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas, cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

### 3. PARILLA ARGENTINA
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40931874672058, -66.10469620681032
TELÉFONO: (787) 792 1470

### 4. SUBWAY
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40997025166623, -66.10529970381423
TELÉFONO: (787) 781 7300

### 5. BURGER KING
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409733572420368, -66.10501270746126
TELÉFONO: (787) 945 1173

### 6. WALGREENS
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409410364752546, -66.10489469026938
TELÉFONO: (787 792 3725

### 7. ME SALVE
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409300932097572, -66.10550355169111
TELÉFONO: (787) 626 7128

### 8. KRESS AND KRESS KIDS
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409250033164586, -66.10586296768456
TELÉFONO: (787 792 0472

### 9. BOOST MOBILE
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40900317312608, -66.10535066578346
TELÉFONO: (939) 349 1856

### 10. HUMBERTO VIDAL
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409130420612804, -66.10600512475659
TELÉFONO: (787) 705 9789

### 11. T.J. MAX
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40958342090213, -66.10527288172517
TELÉFONO: (787) 708 6160

### 12. BANCO POPULAR
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40919404432091, -66.10599171371206
TELÉFONO: (787) 273 0463

### 13. CHILLIS'S
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409211858954972, -66.10601317138331
TELÉFONO: (787) 774 0295

### 14. GAME ZONE
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409015897878994, -66.10531043264986
TELÉFONO: (787) 222 7759

**15. SWEET ANN CAKES**
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.40939509508393, -66.10546063634861
TELÉFONO: (787) 230 7141


**16. CARIBBEAN CINEMAS**
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409204224112017, -66.10590320081816
TELÉFONO: (787)7498660

**17. OFFICE DEPOT PRINT & COPY SERVICES**
DIRECCIÓN: 100 San Patricio Ave, Guaynabo, 00968, Puerto Rico
COORDENADAS: 18.409204224112017, -66.10590320081816
TELÉFONO: (787) 792 1775


(en adelante, nos referiremos a los acomodos públicos de manera individual por su nombre comercial y a este lugar de manera conjunta como "San Patricio Plaza", "la Propiedad" el "lugar de acomodo público"). La siguiente imagen demuestra la propiedad en cuestión:



**Centro Comercial San Patricio Plaza** (18.408996810730702, -66.10575433822093)

**NECESIDAD DE LA ACCIÓN**

2.      Esta Petición de interdicto permanente es necesaria por lo siguiente:

    a) La parte demandada es dueño u operador de los acomodos públicos descritos en los parrafos 2 al párrafo 17 de la demanda, el cual alberga un grupo de compañías que comercializan bienes y servicios en una misma propiedad conocida comercialmente como San Patricio Plaza. En consecuencia, cada una de las corporaciones tiene responsabilidad sobre el área que opera, responde y tiene la facultad de administración y/o adecuación de las áreas sujetas a su arbitrio.

    b) El señor Faustino Betancourt es consumidor de los bienes y servicios ofrecidos en San Patricio Plaza. Por lo cual es visitante regular de la Propiedad con el fin de acceder a

los servicios ofrecidos en la propiedad, incluyendo su estacionamiento, áreas de acceso, áreas comunes, acomodos públicos que operan en su interior y demás áreas de la propiedad donde concurren los visitantes.

c) La Parte demandada no procuró la eliminación de barreras arquitectónicas en el área de su operación.

d) La Parte Demandada mantiene en el lugar donde opera barreras arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible, promulgadas por el Departamento de Justicia de los Estados Unidos, las cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

e) El señor Faustino Betancourt visitó San Patricio Plaza y allí encontró personalmente barreras arquitectónicas en el estacionamiento y áreas internas, dichas barreras se relacionan con su discapacidad;

f) El señor Faustino Betancourt se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas o (ii) sería fútil regresar a San Patricio Plaza en este momento ya que constituiría un riesgo a la seguridad personal del señor Faustino Betancourt o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

g) El señor Faustino Betancourt tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en San Patricio Plaza una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, el señor Faustino Betancourt se reserva el derecho de regresar a la Propiedad en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

**LA PARTE DEMANDANTE**

3.    La Parte Demandante es una persona que sufre de una discapacidad física que limita sustancialmente varias de sus actividades cotidianas principales. La discapacidad física es: insuficiencia cardiaca (congestive heart failure, 20% heart function), hidrocefalia, anormalidades del pie, obesidad. Estas condiciones o "impairments" limitan sustancialmente al señor Betancourt Colon, dicha discapacidad física limita sustancialmente (en comparación con la mayoría de la población) las siguientes actividades principales cotidianas o del diario vivir: caminar, estar de pie,

levantar objetos, inclinarse, trabajar y otras que enciclopedias, diccionarios y tratados médicos autoritativos han relacionado con la discapacidad antes mencionada. A modo de ejemplo el señor Faustino Betancourt se ve afectado por la existencia de un counter alto, porque el señor Faustino se moviliza en su silla de ruedas, por lo cual al acceder a un área de atención al cliente o pago en un counter con una altura mayor a 36" de alto o que su dimensión de ancho tenga menos de 36", limitaría la esencia del servicio de un counter o mostrador, ocasionando una experiencia incomoda y desagradable para el señor Betancourt y para el funcionario que presta el servicio. De igual manera, el señor Faustino Xavier Betancourt Colón tiene un extenso historial médico sobre estas condiciones.

4. La parte Demandante tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

## LA PARTE DEMANDADA

5. La Parte Demandada está integrada por las siguientes personas naturales o jurídicas:

    i. **CAPARRA CENTER ASSOCIATE LLC**: Esta persona jurídica es el dueño de la Propiedad donde se ubica el centro comercial San Patricio Plaza ubicado en el municipio de Guaynabo y el cual alberga en su interior los siguientes acomodos públicos:

    ii. **ARGENTINA GRILL INC** H/N/C Parilla Argentina: Esta persona jurídica opera el restaurante de comida argentina que opera en el interior de San Patricio Plaza, el cual es un restaurante regularmente visitado por el señor Faustino Betancourt porque le gusta su sazón.

    iii. **VRJT INC** H/N/C Subway: Esta persona jurídica opera un restaurante de Sándwich ubicado en San Patricio Plaza, el cual es visitado de manera frecuente por el señor Faustino Betancourt tanto para comer en el lugar, como para llevar de refrigerio.

    iv. **CARIBBEAN RESTAURANTS LLC** H/N/C Burger King: Esta persona jurídica es un restaurante cuya especialidad son las hamburguesas y esta ubicado en San Patricio Plaza, este restaurante es visitado por el señor Faustino Betancourt porque le gustan sus hamburguesas.

    v. **WALGREEN OF PUERTO RICO, INC.** H/N/C Walgreens: Esta persona jurídica opera una farmacia ubicada dentro de San Patricio Plaza y la cual es

visitada frecuentemente por el señor Faustino Betancourt para comprar medicamentos necesarios para su condición médica.

vi. **ME SALVE, INC.** H/N/C Me Salve: Esta persona jurídica opera una tienda de productos para el hogar que opera dentro de San Patricio Plaza, la tienda Me Salve es visitada frecuentemente por el señor Faustino Betancourt para comprar accesorios para su hogar.

vii. **KRESS STORES OF PUERTO RICO, INC.** H/N/C Kress and Kress Kids: Esta persona jurídica opera una tienda de ropa para niños, la cual esta ubicada dentro de San Patricio Plaza. El señor Faustino Betancourt es visitante recurrente de la tienda para comprar ropa para su hija.

viii. **ROMA LIMITED INC.** H/N/C Roma Plus: Esta persona jurídica opera de una tienda de ropa para adultos ubicada en San Patricio Plaza, la cual es visitada por el señor Faustino Betancourt para comprar ropa.

ix. **PRWIRELESS PR, LLC** H/N/C/ Boost Mobile: Esta persona jurídica es operadora de una tienda de teléfonos que esta ubicada en San Patricio Plaza, esta tienda es visitada frecuentemente por el señor Faustino Betancourt para comprar celulares.

x. **HUMBERTO VIDAL, INC.** H/N/C Huberto Vidal: Esta persona jurídica opera una tienda de zapatos y ropa para adulto, esta ubicada en San Patricio Plaza y es visitada por el señor Faustino Betancourt con el fin de comprar zapatos.

xi. **NEW YORK DEPARTMENT STORES DE PUERTO RICO, INC** H/N/C TJ Max: Esta persona jurídica es operador de una tienda de ropa de mujer ubicada en San Patricio Plaza y es visitada por el señor Faustino Betancourt para comprar ropa para su pareja.

xii. **BANCO POPULAR DE PUERTO RICO** H/N/C Banco Popular: Esta persona jurídica es operador de una entidad bancaria de la cual el señor Faustino Betancourt es usuario y por ende visita regularmente esta sucursal.

xiii. **INTERNACIONAL RESTAURANT SERVICES, INC** H/N/C Chili's Grill & Bar: Esta persona jurídica opera un restaurante ubicado en San Patricio Plaza y el señor Faustino Betancourt es visitante recurrente porque a su familia le gusta la comida que este restaurante prepara.

xiv. **GAME ZONE, INC.** H/N/C Game Zone: Esta persona jurídica es operador de una sala de juegos ubicada en San Patricio Plaza, el señor Faustino Betancourt es visitante recurrente porque su hija le gusta jugar en las atracciones que allí se encuentran.

xv. **SWEET ANN CAKE INC** H/N/C Sweet Ann Cakes: Esta persona jurídica es operadora de una pastelería ubicada en San Patricio Plaza y es visitada por el señor Faustino Betancourt porque a su familia le gustan los productos comercializados en la pastelería.

xvi. **CARIBBEAN CINEMAS OF SAN PATRICIO, INC.** H/N/C Caribbean Cinemas: Esta persona jurídica es operador de una sala de cine ubicada en San Patricio Plaza, el señor Faustino Betancourt y su familia visitan la sala para ver películas en estreno.

xvii. **OFFICEMAX PUERTO RICO, INC.; OFFICE DEPOT PUERTO RICO, L.L.C.** H/N/C Office Depot o Officemax: Estas personas jurídicas operan la tienda de productos de oficina y materiales de papelería e impresión. El señor Faustino Betancourt visita regularmente la tienda para comprar materiales de uso en su oficina de la Fundación Faustino Betancourt.

xviii. **FULANOS DE TAL 1-100**. Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores de la Propiedad que se identifica en el primer párrafo de esta petición. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la Petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Demandante" incluye también a todos los demandados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

9. De este procedimiento civil ser en removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

10. El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la *American with Disabilities* Act.

11.     Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda

vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

12.     La Propiedad tiene naturaleza de Centro Comercial y en su interior ofrece diferentes

servicios y productos para la comunidad, por lo cual es un lugar de amplia recurrencia y en el

concurren tanto residentes del municipio de Guaynabo como visitantes de las áreas aledañas

debido a la diversidad comercial que ofrece la zona. Los acomodos públicos mencionados en los

parrafos 2 al párrafo 17, son acomodos públicos definidos por la Ley ADA, 42 U.S.C. 12181(7) y

son lugares abiertos al público y cuya operación afecta el comercio por su naturaleza de centro

Comercial. La Propiedad no es residencial, no es un club privado ni es una iglesia.

13.     La Parte demandante es residente de Puerto Rico.  Su dirección es: RES Los Lirios, 11

Calle Teresa Jornet, Edificio 12, Apartamento 34, San Juan (Cupey), Puerto Rico. Su número de

teléfono es: (787) 348-7280.

14.     El señor Faustino Betancourt y su familia son visitantes frecuentes de San Patricio Plaza,

y en el lugar operan restaurantes de su interés, tiendas que ofrecen productos que el señor Faustino

y su familia utilizan continuamente, así como el área de juegos son un atractivo para el demandante

y su hija menor de edad. Debido a lo anterior tienen interés de visitar la Propiedad para acceder a

diferentes servicios en un mismo lugar.

15.     El señor Faustino Betancourt visita frecuentemente la Propiedad y la visitó para eso del 28

de diciembre de 2021 y encontró barreras que interfirieron con la capacidad de la Parte demandante

para usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en San Patricio Plaza.

16.     Además, y de manera totalmente independiente a lo anterior, la Parte Demandante invoca

legitimación como persona que tiene la intención de regresar a San Patricio Plaza con el propósito

expreso de buscar e identificar barreras arquitectónicas que haya en San Patricio Plaza en el futuro.

El fin de la búsqueda e identificación de las barreras arquitectónicas será con el fin de: (1)

denunciar barreras adicionales que se encuentren en el futuro; (2) verificar el cumplimiento o no

cumplimiento de cualquier orden que dicte este tribunal sobre eliminación de barreras

arquitectónicas. Se alega afirmativamente la existencia de legitimación activa como *tester* de

derechos civiles, según alegado en este párrafo, conforme a la norma vinculante en esta

jurisdicción establecida en <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st

Cir. Feb. 17, 2021), donde se estableció que no es necesario que una persona con discapacidades

sea un "cliente bona fide" del lugar de acomodo público para tener standing para reclamar derechos bajo ADA. Un *tester* de derechos civiles es una persona que tiene la intención especifica de buscar, identificar y denunciar el discrimen, aunque ello represente someterse al discrimen o a condiciones poco seguras.  En <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, el Primer Circuito estableció inequívocamente la existencia de legitimación activa de *tester* al determinar:

> Panaderia España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.
>
> We have not previously addressed the impact of a plaintiff's status as a "tester" on her ability to establish standing under the ADA. However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat standing. As the Eleventh Circuit explained in <u>Houston v. Marod Supermarkets, Inc.</u>, the ADA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility." 733 F.3d at 1332. Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement. Id. at 1332-34 (contrasting 42 U.S.C. §§ 3604(a), and 12182(b)(1)(A)(iv), which do contain such requirements). Hence, such limitations should not be read into the ADA. Id. We agree with this analysis. **Accordingly, we conclude that appellants' status as testers does not defeat standin**g.

<u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st Cir. Feb. 17, 2021) (citas internas omitidas)(énfasis nuestro).

17.    En su capacidad de cliente bona fide, el señor Faustino Betancourt se ha sentido, y se siente hoy en día, disuadido o desalentado de visitar San Patricio Plaza porque tiene conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la San Patricio Plaza desde el estacionamiento, sus rutas de acceso y las áreas internas. La Parte Demandante conoce los bienes y servicios ofrecidos en la Propiedad, y regresará a la Propiedad una vez que se eliminan las barreras.  La Parte Demandante sabe que sería inútil enfrentar estas barreras porque enfrentarlas equivale a someterse a una situación humillante, discriminatoria y peligrosa. Todas las barreras aquí descritas están directamente relacionadas con la discapacidad de la Parte Demandante e interfieren su completo y acceso igual acceso. No obstante, a pesar de sentirse disuadida, tiene la intención de regresar para buscar, identificar y denunciar el discrimen que existe en esa Propiedad.

**BARRERAS**

18.    A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones que ha visto cientos de lugares accesibles y no accesibles a través de su vida, la Parte Demandante alega afirmativamente que existen las siguientes barreras arquitectónicas de *diseño* en la Propiedad y en los acomodos públicos que operan en su interior, relacionadas a su discapacidad y sus limitaciones de movilidad:

**SAN PATRICIO PLAZA**

19.    En cuanto a estacionamientos, no hay el número requerido de estacionamientos accesibles. ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2. Esta barrera afecta al señor Faustino Betancourt en vista de que San Patricio Plaza es un lugar muy concurrido por los servicios que ofrece en su interior, lo cual conlleva a que bastantes personas en condición de discapacidad visiten la Propiedad y normalmente los estacionamientos con espacio para ser accesibles están ocupados en su totalidad. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

20.    En cuanto a la ruta de acceso, no hay una ruta de acceso desde los estacionamientos o la acera hasta una entrada accesible sin escaleras. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1. Esta barrera afecta al señor Faustino Betancourt, ya que durante la ruta de acceso al interior de la Propiedad tiene que superar obstáculos como escalones que ponen en riesgo su vida. Posibles soluciones: añadir una rampa, modificar para que la gradación de la pendiente sea 1:20; añadir una plataforma de elevación ("lifter").

21.    El estacionamiento no recibe un mantenimiento adecuado para que se mantenga en "condición operable" en violación a 28 C.F.R. § 36.211(a). Esta barrera afecta al señor Faustino Betancourt, ya que un estacionamiento que no está en condiciones operables representa peligros para la integridad de quienes se movilizan por el lugar, bien sea por barreras arquitectónicas o por los demás vehículos que circulan por el área y debido a la falta de demarcación no tienen medidas de seguridad en cuanto a velocidad y lugares donde deben circular. Por ejemplo, el mantenimiento del área de estacionamiento ha sido pobre, inconsistente y en incumplimiento con la reglamentación aplicable.

22.    En cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van".[3]  ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Tampoco se cumple con el requisito de que una sexta parte de los estacionamientos accesibles tengan las dimensiones de categoría "van". Id. El señor Faustino Betancourt se ve afectado por falta de estacionamientos para vehículos tipo van, con el fin de acceder a un estacionamiento con una configuración y dimensiones que

---

[3] La ADAAG ni la legislación estatal requiere que una persona con discapacidades tenga una van o camioneta para estacionarse en dichos estacionamientos clasificados por la ADAAG como "Van". Tiene que haber, y se tiene derecho a utilizar, todos los estacionamientos accesibles que requiere la ADAAG.

permiten el acceso al vehículo de manera cómoda. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

23.     La configuración y dimensiones de los estacionamientos accesibles es sustancialmente inconsistente con los requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. El señor Betancourt se ve afectado porque cuando el estacionamiento no está demarcado, las personas tienden a estacionarse de manera incorrecta y limitan las áreas de la ruta de acceso hacia el interior de la Propiedad. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

24.     La configuración y dimensiones de los espacios adyacentes a los estacionamientos es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. ADAAG 2010 § 502.2, 502.3., 503.3.3. El señor Faustino Betancourt se ve afectado, ya que, si los espacios adyacentes al estacionamiento contienen huecos o hundimientos, su silla de ruedas podría caer y causar daños a su salud, por lo cual pone en riesgo su vida cada vez que transita por el área. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

### PARILLA ARGENTINA

25.     Hay mostradores de ventas y servicios al interior del restaurante, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt porque limita su acceso a los alimentos en el counter, además debe estirar su cuerpo al máximo para poder pagar su cuenta después de comer en el restaurante. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### SUBWAY

26.     Hay mostradores de ventas, servicios y pago en el restaurante, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 §

7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt, cuando está escogiendo los ingredientes de su sándwich, posteriormente para recogerlos y finalmente cuando accede a pagar los productos. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## BURGER KING

27.     Hay mostradores de ventas y servicios en el restaurante, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). El señor Faustino Betancourt se ve afectado cuando va a recoger los productos solicitados y cuando va a pagar, ya que debe estirar al máximo su cuerpo, lo cual es peligroso porque su silla podría girarse y caer. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## WALGREENS

28.     Hay mostradores de ventas y entrega de productos en la farmacia, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para

acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera afecta al señor Faustino Betancourt, ya que es un cliente frecuente de la farmacia por razón de sus condiciones médicas y cada vez que acude a comprar medicamentos debe poner en peligro su salud cuando va a recoger o a pagar los productos y debe estirar al máximo su cuerpo estando en su silla de ruedas, por la altura inconsistente del counter. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## ME SALVE

29.    Hay mostradores de ventas y servicios en la tienda, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt cuando llega al mostrador para recoger los productos y realizar el pago, ya que este tiene una medida mayor a 36" de alto. Requiriendo movimientos bruscos y molestos por parte del señor Faustino para llegar al mostrador. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## KRESS AND KRESS KIDS

30.    Hay mostradores de pago en la tienda, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador

cuando el diseño del mostrador es para acercamiento frontal). El señor Faustino Betancourt se ve afectado por esta barrera, ya que cuando va a pagar la ropa generalmente de su hija, debe realizar un esfuerzo mayor y un movimiento peligroso desde su silla para entregar el dinero y recoger la ropa del mostrador. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## BOOST MOBILE

31.     Hay mostradores de ventas, servicios y atención al cliente, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt, ya que el mostrador es demasiado alto y requiere movimientos peligrosos para visualizar los productos del mostrador y para interactuar para los funcionarios. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## HUBERTO VIDAL

32.     Hay mostradores de ventas y servicios en la tienda, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal,

reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal. Esta barrera afecta al señor Faustino Betancourt, ya que cuando va a pagar los productos comprados normalmente para, se ve obligado a pedir asistencia a su acompañante para pagar los productos o si asiste solo debe realizar movimientos peligrosos desde su silla para llegar al mostrador.

## T.J. MAX

33.     Hay mostradores de atención al cliente y de pago en la tienda, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt cuando va a pagar los productos de la tienda, ya que le requiere realizar movimientos peligrosos desde su silla de ruedas para llegar al mostrador. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## BANCO POPULAR

34.     Hay mostradores donde los usuarios depositan el dinero, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera afecta al señor Faustino Betancourt porque limita su acceso al mostrador donde necesariamente se realiza la entrega o se recoge el dinero, aun cuando podrían configurar un mostrador seguro para el banco, pero con la altura menor a 36". Posibles soluciones: bajar una sección del mostrador aun cumpliendo los estándares de seguridad para el banco Popular, ampliar una sección del mostrador,

16

remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### CHILLIS'S

42.     Hay mostradores de ventas y servicios, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt porque para acceder al mostrador debe estirar su cuerpo al máximo, lo cual es peligroso porque podría girar su silla de ruedas y caer al suelo. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### GAME ZONE

35.     Hay mostradores de ventas y servicios, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Faustino Betancourt porque para que su hija acceda a los juegos de Game Zone, se debe pagar en un mostrador con una altura de más de 36", por lo cual el señor Betancourt debe pedir apoyo a otra persona para entregar el dinero o realizar un movimiento peligroso. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal,

reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### SWEET ANN CAKES

36.     Hay mostradores tanto para recoger los postres como para el pago de estos, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Esta barrera limita al señor Betancourt porque para acceder al postre debe estirar su cuerpo desde su silla de ruedas, por lo cual se podría girar su silla y recibir un fuerte golpe. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### CARIBBEAN CINEMAS

37.     Hay mostradores de venta de boletos y de venta de comida, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Estas barreras afectan al señor Faustino porque para comprar los boletos de entrada debe acceder al mostrador de pago que tiene una altura mayor a 36", para lo cual debe pedir asistencia a otra persona para entregar el dinero. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

## OFFICE DEPOT PRINT & COPY SERVICES

38.     Hay mostradores de ventas y servicios, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Estas barreras limitan al señor Faustino Betancourt, ya que en la tienda hay un mostrador con una altura mayor a 36", lo cual dificulta su acceso a la atención por parte de los funcionarios de Office Depot. Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

39.     Las barreras identificadas en el acápite de barreras son solo aquellas que el señor Faustino Betancourt conoce personalmente a base de su experiencia y sentido común como persona con discapacidades, no a base de pruebas científicas o periciales.  La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son la causa del daño ilegal de la parte demandada al señor Faustino Betancourt, es decir, la falta de acceso completo, libre y espontaneo a la Propiedad. Por esto, es la intención del señor Faustino Betancourt utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad del señor Faustino Betancourt para que el acceso a la Propiedad sea completo e igualitario.  Luego de identificadas las barreras, la Parte Demandante se propone solicitar al tribunal enmendar las alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas.

40.     Los Demandados sabían, o debían saber, que la Propiedad era y es inaccesible; que las condiciones la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, los Demandados tienen los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que la Propiedad sea accesible para el señor Faustino Betancourt. Hasta la fecha, sin embargo, la Parte Demandada se niega a eliminar esas barreras.

41. La Parte Demandada ha poseído y disfrutado de suficiente control y autoridad para modificar la Propiedad para eliminar barreras y cumplir con la reglamentación federal aplicable. La Parte Demandada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Demandada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para que cumpla con los estándares de accesibilidad.

42. La Parte Demandante alega afirmativamente que la presencia contínua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Demandada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual de inteligencia promedio que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad. Es a base de esto que la Parte Demandante cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte Demandada ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en cumplimiento, lo que afecta a otros actores económicos. Las barreras arquitectónicas en la Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

43. Basado en el incumplimiento histórico de la Parte Demandados con la ADAAG, el señor Faustino Betancourt cree, y por lo tanto alega, que la Parte Demandada no tiene políticas, procedimientos o documentos internos en relación con esfuerzos de cumplimiento de ADA en la Propiedad.

## CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

44. La Parte Demandante incorpora las alegaciones contenidas en los párrafos anteriores.

45. El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes,

servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

46.     La Parte Demandada discriminó contra la Parte Demandante al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Demandada decidió no visitar el lugar.

47.     La Ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

48.     Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov.  Todas las construcciones nuevas y modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

49.     La Parte Demandante cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

50.     La Parte Demandante cree que la Propiedad está ubicada en un lugar que fue construído después del 26 de enero de 1993. Ver 28 CFR § 36.401.

51.     La Parte Demandante cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de cada uno de los acomodos públicos que operan en San Patricio Plaza.

52.     En la alternativa, si la Propiedad no fue diseñada y construída para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable ", los factores a considerar incluyen los "recursos" de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la Parte Demandada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Demandante no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

## NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

53.     La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

54.     Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables.  § 12182 (b) (2) (A) (v).

55.     Aquí, la parte Demandante alega que la Parte Demandada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Demandada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

56.     En la alternativa, si no es "fácilmente alcanzable" para la Parte Demandada eliminar las barreras arquitectónicas, la Parte Demandada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR
## UNA INSTALACIÓN ACCESIBLE

57.     La Propiedad fue diseñada y construída (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

58.     La Parte Demandada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluída la Parte Demandada, cuando hacerlo era estructuralmente práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

59.     La Parte Demandante cree, y por tanto alega afirmativamente, que la Propiedad ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4) después del 26 de enero de 1992.  28 CFR §36.403; 49 CFR §37.43.

60.     La ADA también requiere que las instalaciones se alteren de forma tal que sea fácilmente accesible para las personas con discapacidad en la medida máxima posible. 42 U.S.C. § 12183 (a) (2).

61.     La Parte Demandada alteró la Propiedad de una manera que violó la ADA y que la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte Demandante.

## BARRERAS NO ESTRUCTURALES:
## POLÍTICAS Y PROCEDIMIENTOS

62.     La ley ADA también requiere hacer modificaciones razonables en las políticas, prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

63.     Aquí, la Parte Demandada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

## DEMANDA BAJO EL TITULO III DE LA ADA

64.     Como resultado de las barreras arquitectónicas descritas anteriormente en esta presente acción la Parte Demandante sufrió y continúa sufriendo humillación, angustia y menoscabo de su dignidad personal y derecho a vivir libre de discriminación o interferencia con sus derechos legales.

65.     La Parte Demandante tiene derecho a un remedio a un interdicto estatutario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Demandada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Demandada haya adoptado y

siga una política institucional que de hecho haga que la Parte Demandada permanezca totalmente en cumplimiento con la ley.

66.    La Parte Demandante también tiene derecho a que en caso de que la Parte Demandada continúe su condición discriminatoria, pueda solicitar que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Demandada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

67.    Conforme a 42 USC §§ 12205, la Parte Demandante tiene derecho a sus honorarios de abogado, gastos de litigio, costas y gastos de testigos periciales.

### REMEDIOS LEGALES SOLICITADOS

**POR TODO LO CUAL**, la Parte Demandante muy respetuosamente solicita los siguientes remedios legales:

A.  Una sentencia declaratoria disponiendo que la parte Demandada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Demandante;

B.  Un interdicto estatuario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Demandada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Demandada haya adoptado y siga una política institucional que de hecho haga que la Parte Demandada permanezca totalmente en cumplimiento con la ley;

C.   En caso de que la Parte Demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Demandada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

D.  Daños compensatorios al amparo del Titulo III de la ADA.

E. Daños nominales ascendentes a un dólar por dos fundamentos completos e independientes: (1) violación al Rehabilitation Act; (2) violación de la Americans with Disabilities Act. Los daños nominales no están disponibles para las causas de acción estatales, pero sí para las causas de acción federales (federal question) y se solicita la imposición de daños nominales expresamente al amparo de lo resuelto en Uzuegbunam v. Preczewski, 592 U.S. (2021).

F. Honorarios de abogado, costas, gastos de litigio, conforme a 42 USC § 12205.

G. La provisión de cualquier otro remedio que sea justo, propio, en ley o equidad, que no haya sido expresamente solicitado pero que proceda como cuestión de derecho.


**SOMETIDO RESPETUOSAMENTE**.

Hoy 1 de mayo de 2022

**Velez Law Group LLC**
División Derechos Civiles

f/José Carlos Vélez Colón
Lic. José C. Vélez Colon
RUA 18913
Velez Law Group LLC
Condominio Midtown
421 Ave Muñoz Rivera #205
San Juan, PR 00918-3115
VLG@velezlawgroup.com
T.: (787)-254-8267

Abogado de la Parte Demandante